Good morning. Stacey Tolchin for Petitioner Najaryan. I would like to reserve three minutes of my time for rebuttal. Please watch the clock. Yes. The respondent's removal proceeding should be terminated because the sole charge on the notice to appear is a charge that 245A2, assault with the firearm, is an aggravated felony. The offense is categorically not an aggravated felony. Now as to some of the issues that were addressed in the previous case, I'd like to direct the court to a case that was issued on November 10th, so very recently, named Almanza Arenas. The case number is 09-71415. Did you submit that in the 28th? We did, Your Honor. The case is interesting because it applies to DeComp, which was again an aggravated felony burglary case, to a crime involving moral turpitude joy riding case. And the court applies Miller v. Gammy to say that DeComp was a change in law, an intervening change in law, and that even though one case involved an aggravated felony and the other case involved a crime involving moral turpitude, Miller v. Gammy still required a finding of intervening law because the procedures to determine Why does that intervening law help you here? I don't see the divisibility here. I'm sorry? The divisibility issue. It's not an issue of divisibility there. There was a categorical approach in both DeComp and in Almanza Arenas. And so in Almanza, the court found that joy riding was categorically not a crime involving moral turpitude. It does go to a different issue that's not required here. But the point, what the court says is that the procedures to determine whether a conviction is a moral turpitude offense and an aggravated felony are identical. And so, as mentioned earlier, what the court looked to in Cerrone is the intent, the intent as interpreted by California Supreme Court. And why Cerrone? I mean, if all it's talking about is the procedures for determining whether they qualify, that doesn't change what the how the court has read the underlying law, does it? No, but the well, the procedure, the mechanism is determining case law and looking at the statute. And so here, of course, in Cerrone, there's nothing new about that. That's always been the case. Right. But the fact that one offense is Cerrone is a moral turpitude offense and this is an aggravated felony, it still means that Miller v. Gami may apply if there's inconsistencies. So what we do is look at whether or not there are inconsistencies. And as discussed earlier, there are a few points I wanted to bring up, some changes after Jaron Salinas and Grajeda. So after Williams comes down in 01, there's actually at least three other cases interpreting 245A, one of which is People v. Wright, which is mentioned in either Grajeda or Jaron Salinas. But People v. Wright basically says that Williams is a negligence case, that it's a negligence standard. Then People v. Wyatt comes down and says it's also a negligence standard. It was the adverb that caught my attention in that sentence. Sorry. Essentially? Yeah. It's actually more explicit. Wright is very explicit. I mean, Wright says, you know, we're not actually sure this is right, but we're bound by it. We're bound by Williams. Is Wright about section 245? Yes, it is, I believe. And importantly, I thought Anzavoli was also important. That's a 2012 case. And Anzavoli says Williams rejected Colantono's characterization of assault as requiring an intent to commit a battery. So Colantono had said an assault is an intent to commit a battery, and that's rejected by Williams. But that's not really even articulated until Anzavoli. And so there are developments that were never addressed in Grajeda. You heard our discussion of Anzavoli in the last argument. I have another little bit here. There was an interesting distinction that counsel made in the last argument about immigration cases and non-immigration cases. This is an immigration case. We have a case called Heron Salinas, where we say, today we hold that conviction for assault with a firearm under California Penal Code 245A2 is categorically a crime of violence and an aggravated felony for immigration purposes. It seems like, well, that's all she wrote. Well, but it does say that in its one paragraph where there was no argument that was made. Fun's enough. It is. Obviously, that's true for precedent. But what it interestingly says is that attempting to commit a violent injury on another naturally involves a person acting in disregard of the risk that force may be used against another. But that's rejected. I mean, Williams says it's exactly not true. There is no subjective awareness. And that's really, really developed in Serone, because Serone is very thorough on its analysis of Williams. Again, if you're looking at the cases interpreting Williams, such as Anzavoli and Wright and Wyatt, you'll see that that's further developed and those discussions aren't really addressed. I'd also just like to direct the Court to a couple of cases on... It's hard to say what it means. And we just talk a lot less about crimes of violence because it's easier. If only... I don't think it's so easy. Why it's a brief per curiam. Well... In one paragraph in Heron Salinas. Your Honor, if I can direct the Court to Covarrubias, which is 632, Fed 3rd, 1049, and then U.S. v. Navarez, the same statute at issue, 489, Fed 3rd, 970. Both of those cases involve Penal Code 246, which is maliciously and willfully shooting at an inhabited dwelling. And the Court in both cases found that the crime of violence ground doesn't apply, because while the act of shooting is intentional, it's committed by a recklessness standard, because the person does not have to intend to shoot at the building. It's just merely the proximity to the building. Both of those cases found that the conviction was not categorically a crime of act of shooting, but then the overall act regarding harm is committed by recklessness. So there's sort of a bifurcated... You've got the distinction. It's not necessarily shooting at a person. You're shooting at a house, and maybe there'll be a person there, maybe not. But assault does not require shooting at a person either, right? Assault with a firearm does not require that the gun actually be fired. It can be waived. In Colutono, they recognize case law where the gun can just be presented and waived, and that's enough. And so there are obviously other statutes where the shot must be fired. Bolanos is a case, for instance, 734 Fed Third 875, where it requires brandishing a gun in a threatened manner in a way to cause reasonable fear or apprehension of bodily harm. There, the Court said categorically a crime of violence. Brandishing a weapon in a threatening manner in order to cause fear. That's intentional conduct. That is a crime of violence. It's very difficult. Before you run out of time, let me ask you a little about the torture issue, your other issue. I think this was a fellow, when he was a boy in school, some other boys beat him up because they were calling him a Turk or something like that. And Armenians think of people like him as Ares. And I was thinking, a boy getting beaten up and called names by a bunch of boys, calling him some negative name relating to his ethnic group, really, that's kind of a boy's life, or used to be. I didn't see where it amounted to torture, and I didn't see why it gave rise to a likelihood of torture if he goes back. Not a little boy anymore. Your Honor, he was also stabbed in the elbow when they tried to stab him in the face and he protected himself. And he also was beaten by a police officer. The judge says that that was a rogue police officer who wasn't responsible for the entire police force. But it does show the overall viewing of not just Turks, but also the Jehovah's Witnesses, because his family was very active. He also made an argument about mandatory military service, which he could not participate in because of his religious beliefs, and that would subject him to some kind of criminal penalties. But hasn't that statute changed? It has, Your Honor. I also believe his age has changed because of the time that's elapsed in this. And so that is another issue in the case. Has he aged out? From my understanding, he's now 28 and the military requirement is 27. So that is a new issue that's arisen since the briefing in the case. Just a very quick question about the police officer incident. Was there anything about that incident that suggested it was based on his ethnicity or his religion? Yes. I believe that he was yelled some expletives at for being Turkish. By the police officer? Yes. Thank you. I'd like to reserve my remaining time. Thank you. Good morning, Your Honors. May it please the Court, John Blakely on behalf of the Respondent Attorney General of the United States. Your Honors, I think it's important to recognize here that the analysis for 245A1 and 245A2 are exactly the same as applies to whether the conviction under the California Penal Code is a crime of violence. And so the analysis is the same as the case before this. Same crime, one with a gun, one without a gun? That's correct, Your Honor. So the analysis is exactly the same. So what about this Almanza's case that your opponent cited? Well, I think you picked up on the important point, Your Honor, that it's true that the procedures are the same. I agree 100% with that. What's different is the actual analysis of the specific elements. There are different elements in the generic crime, crime involved in moral turpitude, and the generic crime of violence. And that's even clear from Cerrone, right? That the elements of moral turpitude and violence are different? Correct, Your Honor. Okay. And so what's important here is to recognize the generic crime or crime of violence and what exactly is required there. And there are only two things that are required, intentional act and a knowledge that the act will probably and directly result in the use of force. And so on page seven of our brief, we've gone in detail into this and to examine Cerrone and said what exactly is said here in Cerrone that applies to crimes involved in moral turpitude that doesn't apply to crimes of violence? And there's three points. And this is the only way that you can really say that Cerrone has a different interpretation of where you can even start to think that there's a different interpretation of people v. Williams than there is in either Heron, Salinas or in Grajeda. And the first of those is the statement from Williams that assault does not require a specific intent to cause injury. And to which we say, okay, that doesn't apply to the elements of crime of violence. So there's nothing inconsistent there. Second, people v. Williams says it does not require a subjective awareness of the risk that injury might occur, not the use of force, that injury might occur. And so if you look at the elements of crime of violence, again, there's no issue there. And then the third where there could be some difference is the California Penal Code, Section 245A1, requires neither physical injury nor even physical contact. And that's true of crime of violence as well. Those are all issues that go to the different analysis involving crime involved in moral turpitude. So the essential question for this Court today is whether Cerrone said something about people v. Williams that would undermine either Heron, Salinas or Grajeda. And there's absolutely nothing in Cerrone that undermines that. So I would ask this Court to deny the petition for review because the conviction under the California Penal Code here is categorically a crime of violence. Now, to address the torture claim just briefly... So I hate to keep bringing this up, but following this, Kamps, there's no requirement that if the statute's not divisible, we don't then look at the underlying facts. That's correct, Your Honor. There's no issue here of moving on to the modified categorical approach or looking to the specific documents or the facts underlying the crime. But if we did, it's clearly... If you looked at the facts of conviction in this case, it's clearly a crime of violence. But we don't do that at all. I agree, Your Honor, that it would be, but I also agree that the Court's not asked to do that in this case. And, of course, in the case in the 28J letter, the Court did do that, did a modified categorical analysis. Well, and in particular, I think when the Court made the comment about the procedures are the same, they were referencing the modified categorical approach. But I think the important thing here is I don't disagree that the same procedures apply, whether or not we stay in the categorical approach or the modified categorical approach. The difference is the specific elements of the crime that we're analyzing. And the elements are considerably different here for crime of violence and crime involving moral turpitude. I think our case law is not altogether perfectly clear on some of the procedural parts of it. But I think we certainly have to live with Grajeda and her own salience. Yes, Your Honor, and that's what I'd ask this Court to do. And I'm happy to address the torture claim if there's any interest from the Court. But otherwise, I'll just ask this Court to deny the petition for review. All right, thank you very much. Thank you, Your Honor. I'll give you two minutes for rebuttal. I just wanted to address Almanza Arenas. It's a strange decision because it does categorically find that the joyriding offense is not a crime involving moral turpitude. It does go on to this modified. So it's a little bit of a hybrid. But in theory, under decomp, you shouldn't get to the modified in such a case. Also, just if the modified did apply, the judicially noticeable facts don't actually present anything here that would show it's an aggravated felony. But I wanted to direct the Court to some words in Asnivole, where the Court just makes clear, again, this is a 2012 case, a defendant who honestly believes his act would not likely result in a battery is still guilty of assault if a reasonable person would view this act as naturally probably resulting in a battery. I don't have that case in front of me. Oh, I'm sorry. That's the street racing case? Yes. But then compare that with her own Salinas, which says, attempting to commit a violent injury on another person with a firearm naturally involves a person acting in disregard of the risk that force may be used. To me, it seems that there really is conflict between these cases. I don't know if I see that. I mean, if I intentionally drive my car straight into somebody, ram him, and he's driving a Mercedes, I may figure subjectively he's not likely to be hurt because he's in a really good car and will have great airbags. But it doesn't matter. It's enough for the assault that I intentionally drove into him and people with any sense would think that I was creating a high risk of injury to him. But the crime of violence definition and requirement is that you actually have the intent. And so, even if you have something like the natural person who sees that, that's the negligence standard, even the recklessness standard, which clearly that's a reckless act, that's not enough under the Covarrubias case. So, it's still not enough because Fernandez Ruiz and Leocal require intent, and intent isn't present here. And I believe I'm out over time. So, thank you very much.
judges: Kennelly, Kleinfeld, Wardlaw